# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
|  | : |  |
| KARESTYN ROBINSON | : | **Case No.:** |
| 3248 Orchardview Dr. SE |  |  |
| East Canton, Ohio 44730 | : | **Judge** |
|  |  |  |
| Plaintiff | : | **Magistrate Judge** |
|  |  |  |
| v. | : | Jury Demand Endorsed Herein |
|  |  |  |
| TIMKENSTEEL CORPORATION | : |  |
| c/o CT Corporation System |  |  |
| 4400 Easton Commons Way | : |  |
| Suite 125 |  |  |
| Columbus, Ohio 43219 | : |  |
|  |  |  |
| and | : |  |
|  |  |  |
| AMANDA STERLING | : |  |
| 5186 Birkdale St. NW |  |  |
| Canton, Ohio 44708-1800 | : |  |

## Preliminary Statement

Defendants TimkenSteel and Amanda Sterling denied Plaintiff Karestyn Robinson, who is black, a promotional opportunity in May of 2014 because she did not have a college degree. One month later, Defendants denied Ms. Robinson's request to participate in TimkenSteel's tuition reimbursement program because Ms. Robinson's career path did not require a college degree. Meanwhile, Defendants approved tuition reimbursement benefits for similarly situated, non-black employees. Over the next six years, Defendants repeatedly blocked Ms. Robinson from promotional opportunities while promoting and advancing similarly situated, non-black employees.

In 2014, Ms. Robinson reduced her employment to part-time to pursue a college degree at her own expense. In 2015 Defendant TimkenSteel enticed Ms. Robinson to return full-time to replace a retiring employee with the promise of a promotion. Ms. Robinson returned full-time

and performed the functions of the promotional position, but Defendants did not promote her. Defendants instead agreed to evaluate her job functions and adjust her compensation and title if she remained full-time. Ms. Robinson remained full-time. Defendant TimkenSteel did not, however, evaluate her job functions or adjust her compensation.

In 2017, Ms. Robinson's performance, as rated by her supervisor, placed her at the top of her department. In March of 2018, however, Ms. Robinson discovered that Defendants had force ranked her to the bottom 10% of her department, depriving her of a raise, bonus and advancement opportunities. Ms. Robinson complained to Defendants' human resources department that Defendants had done this because of her race. Defendants investigated but took no remedial action, apart from agreeing, again, to evaluate Ms. Robinson's job duties. Defendants did not evaluate Ms. Robinson's job functions or adjust her compensation. Meanwhile, Defendants continued to promote lesser qualified, non-black employees.

During the summer of 2018, following Ms. Robinson's complaint of race discrimination, her supervisor subjected her to unprecedented micro-management and repeatedly questioned her whereabouts. When Ms. Robinson confronted her about this, her supervisor admitted that Defendant Sterling had instructed her to build a case against Ms. Robinson.

On September 25, 2018, Ms. Robinson sought emergency medical treatment for anxiety and panic attacks caused by Defendants' retaliation and discrimination. The same day, Ms. Robinson filed a second complaint of discrimination and retaliation, this time with Defendants' outside "Ethics Hotline." Afterwards, Defendants finally evaluated Ms. Robinson's job duties and agreed to promote Ms. Robinson, but once again failed to do so. This, and Defendants continued retaliation, resulted in her constructive discharge on November 1, 2018.

After timely filing a charge of discrimination with the EEOC and obtaining her notice of right to sue, Ms. Robinson brings this case for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and Chapter 4112 of the Ohio Revised Code, as well as claims for aiding, abetting, inciting, compelling and/or coercing discrimination and retaliation under ORC § 4112.02, and breach of contract and related claims under Ohio law.

## Jurisdiction and Venue

1.  This action arises under Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, *et seq.*, Ohio Revised Code Chapter 4112, and Ohio common law.

2.  Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 because claims stated herein arise under the laws of the United States. This Court may also exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

3.  Venue is proper in the Northern District of Ohio, Eastern Division under 28 U.S.C. § 1391(b) because Defendant TimkenSteel is a company doing business in Stark County,

Defendant Amanda Sterling is a resident of Stark County and the claims alleged herein arose in Stark County.

## Parties

### *Plaintiff Karestyn Robinson*

4.    Plaintiff Karestyn Robinson ("Ms. Robinson") is an individual residing in East Canton, Stark County, Ohio.

5.    Ms. Robinson was at all relevant times an "Employee" as that term is defined by Ohio Rev. Code § 4112.01(A)(3) and 42 U.S.C. § 2000e(f).

6.    Ms. Robinson's race is African American.

### *Defendant TimkenSteel*

7.    Defendant TimkenSteel ("TMST") is an Ohio for-profit corporation.

8.    Defendant TMST's principal place of business is in Canton, Ohio.

9.    Defendant TMST engineers and manufactures bearings, gear drives and related products at a manufacturing facility located in Stark County, Ohio.

10.    CT Corporation, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219 is Defendant TMST's Ohio statutory agent.

11.    Defendant TMST is a person engaged in commerce or in an industry or activity affecting commerce.

12.    Defendant TMST employs more than 15 employees for each working day in each of twenty or more calendar weeks in the preceding calendar year.

13.    Defendant TMST was at all relevant times an "Employer" as that term is defined by Ohio Rev. Code § 4112.01(A)(2) and 42 U.S.C. § 2000e(b).

### *Defendant Amanda Sterling*

14.    Defendant Amanda Sterling ("Sterling") is a resident of Canton, in Stark County, Ohio.

15.    Defendant Sterling is a "Person" as that term is defined by Ohio Rev. Code § 4112.01(A)(1).

## Facts

### *Background*

16.    TMST hired Ms. Robinson as a temporary, or contingent, worker in 2008.

17.    TMST's practice in 2008 was to hire employees as contingent workers and promote them to full time within 60 to 90 days.

18.  Ms. Robinson remained a contingent worker for four years.

19.  On March 28, 2012, TMST offered Ms. Robinson a full-time salaried position as Claims Coordinator in the finance department Accounts Receivable Group.

20.  TMST's finance department was known at times relevant to this Complaint as the Transactional Services Department.

21.  As a Claims Coordinator, Ms. Robinson supported the Tryon Peak, North Carolina Timken facility, whose management held her in high regard.

## Facts Common to All Counts
### Denial of Tryon Peak Promotional Opportunity

22.  On May 25, 2014, an Area Manager for the Tryon Peak facility invited Ms. Robinson to apply for a Supply Chain Analyst position at the Tryon Peak facility.

23.  Compensation for the Supply Chain Analyst position at the Tryon Peak facility was approximately $40,000 a year more than Ms. Robinson's Claims Coordinator position.

24.  The Supply Chain Analyst position at the Tryon Peak facility had greater advancement opportunities than Ms. Robinson's Claims Coordinator position.

25.  The Supply Chain Analyst position required a bachelor's degree.

26.  TMST waives the bachelor's degree requirement for employees with sufficient experience and years of service upon their manager's approval.

27.  Ms. Robinson had sufficient experience and years of service to waive the bachelor's degree requirement.

28.  Ms. Robinson's immediate manager, Cathy Haught, approved waiving the Tryon Peak Supply Chain Analyst bachelor's degree requirement for Ms. Robinson.

29.  Ms. Haught's supervisor, Defendant Sterling, refused to waive the bachelor's degree requirement based on Ms. Robinson's experience and years of service.

30.  Sterling's failure to waive the bachelor's degree requirement prevented Ms. Robinson from filling the Tryon Peak Supply Chain Analyst position.

### Denial of College Tuition Reimbursement Benefit

31.  TMST provides college tuition reimbursement benefits.

32.  TMST's tuition reimbursement benefit is open to full-time associates who have at least one year of continuous service, are performing satisfactorily in their job and have the support of managers.

33.  In 2014 Ms. Robinson had more than one year of service.

4

34.     In 2014 Ms. Robinson's performance was satisfactory or better.

35.     Ms. Haught, Ms. Robinson's immediate supervisor, supported Ms. Robinson's tuition reimbursement request.

36.     Defendant Sterling refused to approve Ms. Robinson's the tuition reimbursement request.

37.     Defendant Sterling refused to approve Ms. Robinson's tuition reimbursement request because "a college degree is not necessary for your career path."

### *Denial of Transfer Opportunity*

38.     In July of 2014, Ms. Robinson sought a transfer to a position where her manager would not block her education and advancement.

39.     In July of 2014, Ms. Robinson applied for an Associate Analyst-Customer Relation Management position.

40.     An Associate Analyst-Customer Relation Management position was a lateral position.

41.     Ms. Robinson was qualified for the Associate Analyst-Customer Relations Management position.

42.     Ms. Robinson learned that she was the top candidate for this position.

43.     Defendant Sterling denied Ms. Robinson's request to transfer to the Associate Analyst-Customer Relation Management.

44.     Ms. Sterling denied Ms. Robinson's request to transfer to the Accounts Receivable group because the Accounts Receivable Group could not afford to lose Ms. Robinson

### *Ms. Robinson Pursued a College Degree at her Own Expense*

45.     On July 30, 2014, Ms. Robinson submitted her resignation so she could pursue a bachelor's degree at her own expense.

46.     TMST responded on August 11, 2014 by offering an Independent Employment Agreement (IEA).

47.     The IEA offered by TMST retained Ms. Robinson as an active employee one day a week.

48.     Ms. Robinson accepted the IEA offer.

49.     Ms. Robinson enrolled in the University of Akron in the Fall of 2014.

50.     Ms. Robinson remained continually employed by TMST while enrolled in the University of Akron.

51.     Ms. Robinson paid for her education with student loans and personal funds.

52.     Ms. Robinson earned straight A's during her University of Akron Freshman year.

### *Denial of a Leadership Role*

53.     In the summer of 2014 Ms. Robinson joined TMST's Multicultural Association of Professionals ("MAP").

54.     MAP promotes diversity and inclusion at TMST.

55.     TMST routinely sent Ms. Robinson to NAACP meetings and other African American organization events as its representative.

56.     In February of 2015, the MAP Chairperson, Jennifer Bell, invited Ms. Robinson to co-Chair MAP.

57.     Co-chairing MAP was a leadership position that provided networking and advancement opportunities for Ms. Robinson.

58.     Co-chairing MAP was subject to the approval of Ms. Robinson's managers.

59.     Ms. Haught approved Ms. Robinson's request to Co-Chair MAP.

60.     Defendant Zimmerman, Senior Manager for Transactional Services, and Ms. Haught's immediate manager from this point on, denied Ms. Robinson's request to Co-Chair MAP.

61.     Defendant Sterling, Zimmerman's immediate manager from this point on, also denied Ms. Robinson's request to Co-Chair MPA.

62.     Defendant Sterling refused to approve Ms. Robinson's request to Co-Chair MAP, purportedly because she worked one day a week.

63.     Ms. Robinson volunteered to Co-Chair MAP on her own time.

64.     Defendant Sterling refused to approve Ms. Robinson's request to Co-Chair MAP on her own time.

### *TMST Promised Ms. Robinson a Promotion if she Returned to Work Full-time*

65.     In 2015, Patricia Williams, a Senior Accounts Receivable Analyst in the Transactional Services Department, announced her plans to retire.

66.     TMST asked Ms. Robinson to return to work full time to learn Ms. Williams' Senior Accounts Receivable Analyst position and replace her when she retired.

67.     Ms. Robinson agreed to return to work full time to replace Ms. Williams as Senior Accounts Receivable Analyst when she retired.

### *TMST Did Not Promote Ms. Robinson to Ms. Williams'*
### *Senior Accounts Receivable Analyst position when she Retired.*

68.  Ms. Williams retired in or about December of 2015.

69.  TMST did not replace Ms. Williams as a Senior Accounts Receivable Analyst position when she retired.

70.  TMST instead created an "Associate" Accounts Receivable Analyst position.

71.  An Associate Accounts Receivable Analyst position is a half-step between the Account Receivable Analyst Ms. Robinson held before college and the Senior Accounts Receivable Analyst promised to Ms. Robinson when Ms. Williams retired.

72.  An Associate Accounts Receivable Analyst position is part of TMST's Accounts Receivable Analyst job progression.

73.  TMST's policy and practice is to promote employees to the next step in their job progression without posting the position or requiring the employee to bid on, interview for and compete against other employees for the position.

74.  Defendants posted the Associate Accounts Receivable Analyst position.

75.  Defendants required Ms. Robinson to bid on, interview for and compete against other employees for the Associate Accounts Receivable position.

76.  Ms. Robinson bid on the Associate Accounts Receivable Analyst position.

77.  Ms. Robinson interviewed for and competed with other employees for the Associate Accounts Receivable Analyst position.

78.  Ms. Robinson interviewed for the Associate Accounts Receivable Analyst position with employees of TMST with whom she had regularly worked as an Accounts Receivable Analyst.

79.  The interviewers with whom Ms. Robinson had regularly worked asked why she had to interview for a job in her job progression.

80.  In July of 2016, TMST selected Ms. Robinson for the Associate Accounts Receivable Analyst's position.

81.  TMST promised Ms. Robinson it would evaluate the duties she performed as an Associate Accounts Receivable Analyst and change her job title and adjust her compensation as appropriate.

82.  Ms. Robinson performed the duties of the Senior Accounts Receivable Analyst's position.

83.     TMST did not evaluate the duties Ms. Robinson performed.

84.     TMST did not change Ms. Robinson's job title or adjust her compensation to reflect the Senior Accounts Receivable Analysts duties that she performed.

### TMST Promoted Non-African Americans, without Bids or Interviews

85.     After requiring Ms. Robinson to bid on, interview for and compete against other applicants for a promotion, Defendant TMST repeatedly promoted non-black employees within their job progressions without requiring them to bid on, interview for or compete against other applicants for the promotion.

**Cathy Haught**

86.     Specifically, in 2017, TMST promoted Ms. Haught to a position that was part of Ms. Haught's job progression.

87.     TMST did not require Ms. Haught to bid on or interview for the promotion.

88.     Ms. Haught's race is not African American.

**Ms. M**

89.     Ms. "M" is a similarly situated co-worker in TMST's Transactional Services department.

90.     Ms. M obtained a college degree with TMST tuition reimbursement benefits.

91.     In 2017, TMST promoted Ms. M to a position that was within her job progression.

92.     TMST did not require Ms. M. to bid on or interview for the promotion.

93.     Ms. M's race is not African American.

94.     Ms. Robinson asked Ms. Zimmerman why Ms. M had received a promotion.

95.     Ms. Zimmerman replied that Ms. M. had a college degree, referring to the degree Ms. M. had paid for with TMST tuition reimbursement benefits.

**Ms. P**

96.     In 2017, TMST promoted Ms. "P" to a position that was within her job progression.

97.     TMST did not require Ms. P to bid on or interview for the promotion to the position that was within her job progression.

98.     Ms. P's race is not African American.

**Mr. G**

8

99.  In 2018 Defendant hired Mr. "G" as an Accounts Receivable Analyst.

100.  Ms. Robinson trained Mr. G.

101.  In June or July of 2018, while Ms. Robinson was still training Mr. G, Defendants promoted him to Accounts Receivable Analyst.

102.  TMST did not require Mr. G to bid on the position or interview for it.

103.  Mr. G's race is not African American.

### *TMST Denied Ms. Robinson's Request to Work Remotely*

104.  In or about June of 2017, TMST employed similarly situated Accounts Receivable team members in Charlotte and Atlanta.

105.  The Accounts Receivable team members in Charlotte and Atlanta worked remotely.

106.  The Accounts Receivable team members in Charlotte and Atlanta were not African American.

107.  Ms. Robinson asked if she could work remotely from a location such as Charlotte or Atlanta.

108.  Ms. Haught approved Ms. Robinson's request to work remotely from a location such as Charlotte or Atlanta.

109.  Ms. Zimmerman denied Ms. Robinson's request to work remotely.

110.  Ms. Zimmerman denied Ms. Robinson's request to work remotely, purportedly because "this job is based in Canton, Ohio" and she was concerned Ms. Robinson would find other opportunities outside of Canton.

### *"I Could Hire Someone Off the Street Better than You"*

111.  Ms. Robinson's job duties included periodic preparation of a complicated document known as a reconciliation.

112.  A reconciliation contains a cover sheet, spreadsheets, supporting documentation and masses of other account information.

113.  TMST does not specify the order in which information must appear in a reconciliation.

114.  Ms. Robinson had prepared numerous reconciliations in the past.

115.  Ms. Robinson had prepared numerous reconciliations to the satisfaction and with the approval of Ms. Haught.

116.  In or around the 2017 Holidays, Ms. Robinson completed a reconciliation.

117.    Ms. Haught was not in Canton at that time.

118.    Ms. Robinson presented the reconciliation instead to Defendant Sterling.

119.    Defendant Sterling criticized the order of the information in the reconciliation.

120.    Defendant Sterling asked Ms. Robinson if she knew what she was doing.

121.    Defendant Sterling told Ms. Robinson, "you don't know your job."

122.    Defendant Sterling told Ms. Robinson, "I could pull someone off the street who could do better than you."

### *Only African Americans were not Promoted*

123.    Tracy Williams is a 20 + year employee of TMST.

124.    In 2018, Ms. Tracy Williams held the position of Accounts Receivable Analyst in the Transactional Services Department.

125.    Ms. Tracy Williams is similarly situated to Ms. Robinson.

126.    Ms. Tracy Williams's race is African American.

127.    Ms. Tracy Williams and Ms. Robinson were the only African Americans in the Transactional Services Department.

128.    In or about January of 2018, Ms. Tracy Williams asked Ms. Zimmerman for a promotion based on her experience and years of service.

129.    Ms. Zimmerman told Ms. Tracy Williams that TMST was not promoting employees.

130.    Ms. Zimmerman told Ms. Tracy Williams that TMST did not have money for promotions.

131.    On January 18, 2018, Ms. Tracy Williams prepared a spreadsheet that identified similarly situated Transactional Services employees.

132.    Ms. Tracy Williams identified similarly situated Transactional Services employees who had received a promotion.

133.    Of the 12 employees identified by Ms. Tracy Williams in her spreadsheet, two were new employees who were not candidates for promotion.

134.    Of the remaining 10 employees, Ms. Williams identified six that had received promotions, a seventh that had a promotion pending, and an eighth employee whose promotional status she did not know.

10

135.   Ms. Robinson and Ms. Tracy Williams were the only employees eligible for a promotion who had not received one. Ms. Robinson and Ms. Tracy Williams were the only two African American employees in Transactional Services,

### *Defendant Zimmerman Made Racial Comments*

136.   In June of 2017, a friend of Ms. Robinson's brother died in a homicide.

137.   On June 19, 2017, Ms. Robinson planned to attend the funeral for her brother's deceased friend.

138.   Ms. Robinson placed the funeral on her calendar.

139.   On the day of the funeral, an urgent task prevented Ms. Robinson from attending the funeral.

140.   Ms. Robinson had a one-on-one meeting with Ms. Zimmerman that day.

141.   Ms. Zimmerman told Ms. Robinson she heard her brother had been involved in a homicide.

142.   Ms. Robinson's brother had not been involved in the homicide. In fact, Ms. Robinson's brother was in college in Buffalo, New York on a scholarship.

143.   Ms. Zimmerman asked Ms. Robinson, "how do you deal with all these urban issues that affect your life."

144.   On other occasions, Ms. Zimmerman commented on Ms. Robinson's attire and hair.

145.   For example, Ms. Robinson wore faux locs in her hair.

146.   Ms. Zimmerman asked if Ms. Robinson had to "go to a black person to get it done."

147.   Ms. Zimmerman said she did not understand why Ms. Robinson "wanted to put other people's hair in (her) own."

### *Defendants Force Ranked Ms. Robinson in the Bottom 10% of the Department*

148.   Towards the end of 2017, Ms. Haught prepared Ms. Robinson's performance evaluation for the previous year.

149.   Ms. Haught rated Ms. Robinson as meeting all goals for 2017.

150.   Ms. Haught rated Ms. Robinson as partially exceeding many of her goals for 2017.

151.   Ms. Haught made extensive, positive comments about Ms. Robinson's performance in her 2017 review.

152.   As a result of this performance review, Ms. Robinson earned a 100% performance rating.

153.  A 100% performance rating entitled Ms. Robinson to an annual increase and bonus.

154.  Unbeknownst to Ms. Robinson, TMST utilized a secret, forced ranking system in 2017.

155.  The forced ranking process took place during a so-called "calibration" meeting.

156.  The forced ranking system required departments to identify performers who were in the bottom 10% of their department, known as "B10 Performers."

157.  B10 performers received no or lower annual increases and bonuses than employees who earned 100% performance rankings.

158.  Defendant Sterling and Ms. Zimmerman participated in the calibration meeting.

159.  Ms. Haught did not participate in the calibration meeting or the forced ranking process.

160.  Ms. Haught told Defendant Sterling that Ms. Robinson was not a B10 performer.

161.  Defendants TMST and Sterling nonetheless force ranked Ms. Robinson as a B10 performer.

162.  As a result of force ranking Ms. Robinson as a B10 performer, TMST reduced Ms. Robinson's increase and bonus from that she would have received based on her 100% performance rankings.

163.  On March 8, 2018, Ms. Robinson met with Ms. Haught to review her evaluation.

164.  Ms. Robinson's annual increase and bonus award were far lower than she expected.

165.  Ms. Robinson asked Ms. Haught to explain why her annual increase and bonus award were so low.

166.  Ms. Haught disclosed that Defendants had force ranked employees in the Transactional Services department.

167.  Ms. Haught disclosed that Defendant Sterling had placed Ms. Robinson in the bottom 10%.

168.  Ms. Haught told Ms. Robinson that Defendant Sterling justified her decision to force rank Ms. Robinson as a B10 performer was because she had not attended a social event.

169.  TMST did not require employees to attend social events.

170.  Ms. Robinson's job description and evaluation goals did not require her to attend social events.

171.  Ms. Robinson had not attended that particular social event because she was in her office working late.

172.   Ms. Robinson left the review with Ms. Haught and went to Ms. Zimmerman's office.

173.   Ms. Robinson asked why Defendants placed her in the bottom 10%.

174.   Defendant Zimmerman replied, because "you're not seen as a team player."

175.   Ms. Robinson had years of performance reviews that showed she was a team player.

176.   Ms. Zimmerman's first justification for force ranking Ms. Robinson to the bottom 10% was not true.

177.   Ms. Zimmerman next said that Ms. Robinson's "performance was low because you carry yourself with too much pride."

178.   Ms. Zimmerman also justified Ms. Robinson's forced ranking because "you have an unapproachable face."

### Ms. Robinson Complained of Race Discrimination to TMST

179.   Ms. Robinson went straight from Ms. Zimmerman's office to Organization Advancement (*i.e.,* TMST's Human Resources) on March 8, 2018 and met with Jeaneen Mcdaniel in Organizational Advancement.

180.   Ms. Robinson reported to Ms. Mcdaniel that Defendants Sterling and Zimmerman had prevented her from advancing and adversely affected her benefits and compensation because of her race.

### Defendants Retaliated Against Ms. Robinson for Complaining of Race Discrimination

181.   Ms. Mcdaniel investigated Ms. Robinson's complaints.

182.   Ms. Mcdaniel concluded her investigation on or about May 4, 2018, at which time she recommended that Defendant complete its promised 2015 reevaluation of Ms. Robinson's job description, which would lead to an increase in compensation and likely change in title.

183.   Defendants did not reevaluate Ms. Robinson's job description.

184.   Defendants did not adjust Mr. Robinson's compensation.

185.   Defendants did not change Ms. Robinson's job title.

186.   After Ms. Robinson complained about Defendants' race discrimination, Ms. Haught's behavior towards Ms. Robinson changed.

187.   Before Ms. Robinson complained about Defendants' race discrimination, Ms. Haught managed her with a "hands off" approach.

188.  After Ms. Robinson complained about Defendants' race discrimination, Ms. Haught questioned Ms. Robinson's whereabouts in writing, instructed her on routine details of her job, quizzed other employees about Ms. Robinson's work and micromanaged her performance.

189.  On or about July 24, 2018, Ms. Robinson confronted Ms. Haught about the change in how she managed Ms. Robinson's performance.

190.  Ms. Haught conceded that Ms. Robinson's performance was beyond satisfactory.

191.  Ms. Haught confided that Defendant Sterling "wants me to build a case on you."

192.  Ms. Haught disclosed that she had told Defendant Sterling in December of 2017, before the calibration meeting, that Ms. Robinson had a 100% performance ranking.

193.  Ms. Haught disclosed to Ms. Robinson that she had warned Defendant Sterling against placing Ms. Robinson in the bottom 10%, but that Defendant Sterling did it anyway.

194.  Despite these admissions, Ms. Haught continued to question Ms. Robinson's whereabouts and about details of her job and otherwise micromanage and scrutinize Ms. Robinson's performance.

195.  Ms. Haught's intrusive management interfered with Ms. Robinson's ability to do her job.

196.  On August 31, 2018, during a one-on-one meeting, Ms. Robinson again pressed Ms. Haught to explain her management change.

197.  Ms. Haught replied that Defendants Sterling "wants documentation for her case on you."

198.  On September 20, 2018, Ms. Robinson asked to take a vacation day on September 24, 2018 so she could take her grandmother to visit a relative with cancer.

199.  On September 20, 2018, Ms. Haught approved Ms. Robinson's request to take a day of vacation on September 24, 2018.

200.  At 9:17 am on September 24, 2018, while Ms. Robinson was driving her grandmother to visit her relative with cancer, Ms. Zimmerman contacted her and instructed her to complete "today" an account reconciliation that was due the next day.

201.  Ms. Robinson pulled over, found a place to work and completed the reconciliation by noon.

202.  On September 24, 2018, while Ms. Robinson was still finishing the reconciliation that was due the next day, Ms. Haught emailed Ms. Robinson that "I don't have anything about you being off today and there's nothing on your calendar."

203.  Ms. Robinson reminded Ms. Haught that she had approved a day off four days ago.

14

204. Ms. Haught recalled that she had in fact approved Ms. Robinson's vacation day, but then criticized Ms. Robinson for not completing the reconciliation before taking the day off.

205. On September 25, 2018, Ms. Haught again interrogated Ms. Robinson unfairly about her whereabouts.

206. On September 25, 2018, Ms. Haught held a one-on-one meeting with Ms. Robinson that became heated because Ms. Haught would not stand up to Defendant Sterling.

207. On September 25, 2018, Ms. Zimmerman and Ms. Haught ordered Ms. Robinson to provide them information necessary for, and instructions on how, to perform her job.

208. On September 25, 2018, Ms. Haught told Ms. Robinson that she needed "this information no later than by end of day tomorrow."

209. On September 25, 2018, Ms. Robinson sent Ms. Haught the information that she asked for by the end of the following day.

210. On September 25, 2018 at 3:24 pm, Ms. Haught emailed Ms. Robinson with instructions to create an account for a customer.

211. Thirty minutes later, on September 25, 2018 at 3:54 pm, Ms. Haught emailed Ms. Robinson to "let me know asap if you are not able to create this today before 5:00 pm."

212. Ms. Robinson completed the account for the customer by 5:00 p.m.

### *Ms. Robinson Complained to TMST's faux "Third-Party" Hotline About Defendants' Discriminatory Harassment and Retaliation*

213. Ms. Robinson believed that Defendants TMST and Sterling were building a case on her in retaliation for her complaint to Organizational Advancement about their race discrimination.

214. TMST's Handbook stated that Defendant "strictly forbids retaliation and will discipline anyone who engages in it."

215. TMST's Handbook gave as examples of retaliation "lack of promotional opportunities" and "increased level of supervision or criticism."

216. TMST's Handbook offered a Hotline resource that, it said, "is answered by an external third party."

217. On September 25, 2018, at or about 4:00 pm, Ms. Robinson filed a complaint with Defendant's "Ethics Hotline."

218. Ms. Robinson's Ethics Hotline complaint stated:

I met with Employee Relations manager 03/08/2018 to discuss issues with job duties and requirements. I was rated as having 100% performance but I was put in the bottom 20% of associates due to missing non-work related functions (which affected my "teamwork" competency according to Amanda Sterling). I was also not given my fair merit raise due to this bottom 20% placement, after receiving 100% personal performance. my other main concern was that I have been passed over repeatedly for advancement. Since my complaint, Amanda Sterling has been using her direct report(s) to bully me and make my job unbearable in hopes that I quit because she personally feels that I am incompetent & she's verbally said it. I have been under intense scrutiny, increased levels of supervision, criticism and excessive stress related to the retaliation I'm dealing with. When I address my concerns and I'm immediately met with unnecessary force and verbal attacks. According to Deborah Zimmerman, the I have been told that they reason I'm facing such adversity is because "I carry myself with too much pride". She is constantly making underhanded racial references and I feel as though she is intimidated by me due to my race, not due to my interactions. Employee Relation manager was able to prove that I have never been reprimanded, nor have I done anything that was against company protocol, as far as competency goes. Finance management was instructed to re-evaluate my job description, but I have not heard one word about it, other than Amanda Sterling telling her direct report(s) that I am over compensated & incompetent. I was told (word of mouth) that she said to stop trying to re-evaluate the jobs because "I'm not going anywhere, because I don't have a degree and I should be glad that I still have a job". I have even attempted to leave the department and I am either blocked or told that I am not allowed. The list and emails can go on & on. I would just like some assistance with this situation because I am mentally drained and my work is now suffering because I am under so much pressure & stress that I can't control, even when I'm doing 100% of my duties.

### *Ms. Robinson went to Aultman Emergency Room Because of Defendants' Discrimination and Retaliation*

219.   On September 25, 2018, Ms. Robinson checked into the Aultman Urgent Care West Emergency Room with severe chest pains.

220.   Aultman Hospital discharged Ms. Robinson with a diagnosis of anxiety attack/panic attack.

221.   Aultman Hospital instructed Ms. Robinson to meet with a therapist, which she did.

### *Ms. Robinson's Complaint to the "Third Party" Hotline*
### *Went to Defendant TMST*

222.    On September 27, 2018, Defendant informed Ms. Robinson that it sent her hotline complaint to Organizational Advancement, not a third party as Defendants' Handbook stated.

223.    On October 1, 2018, Ms. Zimmerman arranged a meeting to review Ms. Robinson's job description.

224.    Ms. Zimmerman, Ms. Haught, Ms. Robinson and a representative from Organizational Advancement attended the meeting to review her job description.

225.    Defendants acknowledged during this meeting that Ms. Robinson had the years of service necessary for a promotion.

226.    Ms. Haught stated that Ms. Robinson was "very good. She knows her job inside and out. I would call her the expert for Value Add. And she knows the other side too. She is the expert on Value Add, and on Tooling, on Customer Masters."

227.    The Organizational Advancement representative proposed creating a "Senior" Accounts Receivable Analyst position for Ms. Robinson.

228.    This was the same Senior Accounts Receivable Analyst position that TMST promised Ms. Robinson when it convinced her to return from college without a degree in 2015.

229.    Defendants agreed during this meeting to submit a request to promote Ms. Robinson to this Senior Accounts Receivable Analysts position.

230.    Ms. Haught emailed Ms. Robinson that Defendants would submit the request to promote Ms. Robinson to Senior Accounts Receivable Analyst on either October 18 or October 25, 2018.

### *Defendants Failed to Submit or Approve Ms. Robinson's Promotion*

231.    On October 1, 2018, Ms. Robinson met with a representative from TMST's Organizational Advancement to discuss her Ethics Hotline complaint.

232.    Ms. Robinson detailed Defendant Sterling's and Ms. Zimmerman's disparaging and racists comments.

233.    Ms. Robinson reported on Defendant Sterling's efforts to build a case on her.

234.    The Organizational Advancement representative told Ms. Robinson that she would investigate these reports and TMST would respond accordingly.

235.    On October 16, 2018, the Organizational Advancement representative informed Ms.

Robinson that she planned to speak with Defendant Sterling and Ms. Zimmerman about Ms. Robinson's Hotline complaint.

236. On information and belief, the Organizational Advancement representative met with Defendant Sterling and Ms. Zimmerman on or after October 16, 2018.

237. On October 18, 2018, Defendants failed to submit or approve Ms. Robinson's promotion.

238. On October 25, 2018, Defendants failed to submit approve Ms. Robinson's promotion.

239. Defendants did not promote Ms. Robinson to Senior Accounts Receivable Analyst.

### *Sabotage*

240. On October 9, 2018, Ms. Robinson finished compiling a massive data set known as the "Metrics Memo."

241. The October Metrics Memo was essential for the completion of an important report due at the end of October.

242. Ms. Robinson gave the Metrics Memo to Ms. Haught on October 9, 2018.

243. On October 29, 2018, Ms. Haught informed Ms. Robinson that the Metrics Memo information was gone.

244. Ms. Haught and Ms. Robinson searched for the missing Metrics Memo or a backup, without success.

245. The report that depended on the Metrics Memo was due days later.

246. Ms. Robinson and Ms. Haught expended significant effort to re-create the Metrics Memo.

247. Ms. Robinson became physically ill.

248. On information and belief, the Metrics Memo was deliberately and maliciously deleted.

249. Ms. Robinson believed that the Metrics Memo was deliberately and maliciously deleted.

250. Ms. Robinson believed that the Metrics Memo was deleted to sabotage her work and cause her to resign or to justify her termination.

251. Ms. Robinson felt compelled to resign before being terminated.

252. On November 1, 2018, Ms. Robinson resigned.

253. Six weeks after Ms. Robinson resigned, Organizational Advancement reported on the results of its "Hotline" investigation.

254. Despite Ms. Robinson's direct report of Defendant Sterling's and Defendant Zimmerman's disparaging and racists comments, Organizational Advancement reported

"[t]here was no evidence of inappropriate racial references, retaliation, bullying or demeaning behaviors."

255. Despite Ms. Robinson's direct report of Defendant Sterling's efforts to build a case on her, the Organizational Advancement report failed to address that fact.

256. As to her promotion, the Organizational Advancement report stated Defendants would "address perceptions around career opportunities."

257. Even though three years had passed since Defendants promised to evaluate her job description, and despite Defendants' October 1, 2018 agreement to promote Ms. Robinson to Senior Accounts Receivable Analyst by October 25, 2018, the Organizational Advancement investigative report committed Defendants only to "ensur(ing) jobs are evaluated in a reasonable amount of time."

258. As to Defendants' discriminatory forced ranking to the bottom 10%, the Organizational Advancement report acknowledged Ms. Robinson's "frustration with your 2017 performance evaluation" and stated that Defendants would "take steps to avoid these types of situations in the future."

259. The Organizational Advancement investigative report concluded by thanking Ms. Robinson for reporting her concerns.

## Count I

### Defendant TMST's Discriminatory Denial of Promotion to Supply Chain Analyst Position in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99

260. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

261. Defendant TMST failed and refused to substitute Ms. Robinson's experience and years of service for the Tryon Peak Supply Chain Analyst's bachelor's degree requirement because of her race.

262. Defendant TMST blocked Ms. Robinson's promotion to a Supply Chain Analyst's position at the Tryon Peak facility because of her race.

263. Defendant TMST's failure and refusal to waive the bachelor's degree requirement based on Ms. Robinson's experience and years of service, thereby blocking her promotion to a Supply Chain Analyst's position, constitutes race discrimination in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99.

264. Because of Defendant TMST's race discrimination, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count II

**Defendant Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Denial of Promotion in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

265.    Ms. Robinson restates the preceding allegations as though fully rewritten herein.

266.    Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory denial of Ms. Robinson's promotion to Supply Chain Analyst.

267.    Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

268.    Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory denial of Ms. Robinson's promotion to Supply Chain Analyst, and her obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

269.    Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count III

**Defendant TMST's Discriminatory Denial of Tuition Reimbursement Benefits in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99**

270.    Ms. Robinson restates the preceding allegations as though fully rewritten herein.

271.    Defendant TMST failed and refused to approve Ms. Robinson's application for tuition reimbursement benefits because of her race.

272.    Defendant TMST's failure and refusal to approve Ms. Robinson's application for tuition reimbursement constitutes race discrimination in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99.

273.    Because of Defendant TMST's race discrimination, Ms. Robinson incurred over $24,000 in tuition costs and interest on student loans, lost advancement opportunities and suffered emotional distress.

## Count IV

**Defendant Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Denial of Tuition Reimbursement Benefits in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

274.   Ms. Robinson restates the preceding allegations as though fully rewritten herein.

275.   Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory denial of Ms. Robinson's tuition reimbursement benefits.

276.   Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

277.   Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory denial of tuition reimbursement benefits, and her obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

278.   Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count V

**Defendant TMST's Discriminatory Denial of Advancement Opportunities in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99**

279.   Ms. Robinson restates the preceding allegations as though fully rewritten herein.

280.   Defendant TMST failed and refused to approve Ms. Robinson's application for an Associate Analyst-Customer Relation Management position because of her race.

281.   Defendant TMST failed and refused to approve Ms. Robinson's request to Co-Chair Defendant TMST's Multicultural Association of Professionals because of her race.

282.   Defendant TMST failed and refused to approve Ms. Robinson's request to work from a remote location such as Charlotte or Atlanta because of her race.

283.   Defendant TMST's the failures and refusals cited in this Count constitute race discrimination in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99.

284.   Because of Defendant TMST's failures and refusals, Ms. Robinson has lost advancement opportunities and corresponding increases in compensation and has suffered emotional distress.

## Count VI

**Defendant Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Denial of Advancement Opportunities in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

285.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

286.  Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory denial of Ms. Robinson's advancement opportunities.

287.  Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

288.  Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory denial of advancement opportunities, and her obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

289.  Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count VII

**Defendant TMST's Breach of Contract:
Failure to Promote to Senior Accounts Receivable Analyst Position**

290.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

291.  Defendant TMST offered to promote Ms. Robinson to Senior Accounts Receivable Analyst in exchange for her returning full time from college without a degree.

292.  Ms. Robinson agreed to return full time from college without a degree in exchange for Defendant TMST's promise to promote her to Senior Accounts Receivable Analyst.

293.  Ms. Robinson returned full time from college without a degree.

294.  Following Ms. Robinson's return full time from college without a degree, Defendant TMST failed and refused to promote Ms. Robinson to Senior Accounts Receivable Analyst.

295.  Defendant TMST's failure and refusal to promote Ms. Robinson to Senior Accounts Receivable Analyst breached its agreement with her.

296.    As a result of TMST's breach of its agreement with her, Ms. Robinson has suffered compensatory, direct and consequential damages.

## Count VIII

### Promissory Estoppel by Defendant TMST:
### Failure to Promote

297.    Ms. Robinson restates the preceding allegations as though fully rewritten herein.

298.    Defendant TMST represented to Ms. Robinson that it would promote her to Senior Accounts Receivable Analyst if she returned full time from college without a degree.

299.    Ms. Robinson relied on Defendant TMST's representation by returning to work full time from college without completing her degree.

300.    Ms. Robinson's reliance on Defendant TMST's representation was reasonable.

301.    Defendant TMST failed and refused to promote Ms. Robinson to Senior Accounts Receivable Analyst, to Ms. Robinson's detriment.

302.    As a result of Defendant TMST's failure and refusal to promote Ms. Robinson to Senior Accounts Receivable Analyst, Ms. Robinson has suffered compensatory, direct and consequential damages.

## Count IX

### Defendant TMST's Breach of Contract:
### Failure to Evaluate Ms. Robinson's Job Duties and Adjust her Compensation and Title

303.    Ms. Robinson restates the preceding allegations as though fully rewritten herein.

304.    Defendant TMST offered to evaluate Ms. Robinson's job duties and adjust her compensation and title accordingly in exchange for her continued full-time employment as an Account Receivable Analyst and later as an Associate Account Receivable Analyst.

305.    Ms. Robinson agreed to continue full time employment as an Account Receivable Analyst and later as an Associate Account Receivable Analyst in exchange for Defendant TMST's promise to evaluate her job duties and adjust her compensation and title accordingly.

306.    Ms. Robinson continued full time employment as an Accounts Receivable Analyst and later as an Associate Account Receivable Analyst.

307.    Defendant TMST failed and refused to evaluate Ms. Robinson's job duties or adjust her compensation or title.

308. Defendant TMST's failure and refusal to evaluate Ms. Robinson's job duties or adjust her compensation or title breached its agreement with her.

309. As a result of TMST's breach of its agreement with her, Ms. Robinson has suffered compensatory, direct and consequential damages.

## Count X

### Promissory Estoppel by Defendant TMST:
### Failure to Evaluate Ms. Robinson's Job Duties and Adjust her Compensation and Title

310. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

311. Defendant TMST represented to Ms. Robinson that it would evaluate her job duties and adjust her compensation and title if she continued full time employment as an Account Receivable Analyst and later as an Associate Account Receivable Analyst.

312. Ms. Robinson relied on Defendant TMST's representation by continuing her full-time employment as an Account Receivable Analyst and later as an Associate Account Receivable Analyst.

313. Ms. Robinson's reliance on Defendant TMST's representation was reasonable.

314. Defendant TMST failed and refused to evaluate Ms. Robinson's job duties or adjust her compensation or title, to Ms. Robinson's detriment.

315. As a result of Defendant TMST's failure and refusal to evaluate her job duties or adjust her compensation or title, Ms. Robinson has suffered compensatory, direct and consequential damages

## Count XI

### Defendant TMST's Discriminatory Failure to Promote within Job Progression
### in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99

316. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

317. Defendant TMST failed and refused to promote Ms. Robinson within the Accounts Receivable Analyst Job Progression because of her race, in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99.

318. Because of Defendants' discriminatory failure and refusal to promote Ms. Robinson within the Accounts Receivable Analyst Job Progression, Ms. Robinson has lost advancement opportunities and suffered emotional distress.

## Count XII

### Defendants Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Failure to Promote within Job Progression in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99

319. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

320. Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory failure to promote Ms. Robinson within the Accounts Receivable Analyst Job Progression.

321. Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

322. Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory denial of advancement opportunities, and her obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

323. Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and their failure to prevent it, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count XIII

### Defendant TMST's Discriminatory Forced Ranking of Ms. Robinson in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99

324. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

325. Defendant TMST force ranked Ms. Robinson to the bottom 10% of the employees in the Transactional Services Department because of her race.

326. Defendant TMST's forced ranking of Ms. Robinson to the bottom 10% of the employees in the Transactional Services Department constitutes race discrimination in violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99.

327. Because of Defendant TMST's race discrimination, Ms. Robinson has lost earnings and has suffered emotional distress.

## Count XIV

### Defendant Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Forced Ranking in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99

328.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

329.  Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory forced ranking to the bottom 10% of the employees in the Transactional Services Department.

330.  Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

331.  Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory forced ranking of Ms. Robinson to the bottom 10% of the employees in the Transactional Services Department, and their obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

332.  Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has lost earnings and advancement opportunities and suffered emotional distress.

## Count XV

### Defendant TMST's Discriminatory Forced Ranking in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

333.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

334.  On or after December 1, 2017, Defendant TMST force ranked Ms. Robinson to the bottom 10% of the employees in the Transactional Services Department because of her race.

335.  Defendants' forced ranking of Ms. Robinson to the bottom 10% of the employees in the Transactional Services Department constitutes race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

336.  On or before September 27, 2018, Ms. Robinson instituted a proceeding with the Equal Employment Opportunity Commission (EEOC) by submitting a written statement to the EEOC that identified Defendant TMST as her employer and that it engaged in a discriminatory employment practice against her because of her race.

26

337.    The Ohio Civil Rights Commission (OCRC) is a State agency with authority to grant or seek relief from unlawful race discrimination.

338.    The OCRC and the EEOC were at all relevant times parties to an agreement pursuant to which the person aggrieved instituted a proceeding with both agencies upon instituting a proceeding with either agency.

339.    On January 14, 2020, the EEOC sent Ms. Robinson a notice of her right to sue for discrimination under Title VII of the Civil Rights Act of 1964.

340.    Because of Defendants TMST's race discrimination, Ms. Robinson has lost compensation and earnings, suffered emotional distress and incurred attorneys' fees and costs.

## Count XVI

### Defendants Retaliatory Harassment in Violation of
### Ohio Rev. Code §§ 4112.02(I) and 4112.99

341.    Ms. Robinson restates the preceding allegations as though fully rewritten herein.

342.    On or about March 8, 2018, Ms. Robinson opposed unlawful discriminatory conduct by Defendant TMST and participated in an investigation and proceeding under Ohio Rev. Code §§ 4112.01 to 4112.07 by reporting to Defendant TMST's Organizational Advancement department that Defendants TMST and Sterling had blocked her advancement and interfered with her compensation because of her race.

343.    On and after March 8, 2018, Defendants TMST and Sterling engaged in a campaign of harassment against Ms. Robinson.

344.    Defendants' campaign of harassment was pervasive.

345.    Defendants' campaign of harassment constituted a tangible, adverse employment action against Ms. Robinson.

346.    Defendants' campaign of harassment interfered with Ms. Robinson's ability to do her job.

347.    Defendants' campaign of harassment was causally connected to Ms. Robinson's opposition to Defendants' discriminatory conduct and her participation in an investigation and proceeding under Ohio Rev. Code Chapter 4112.

348.    Defendants' campaign of harassment violated Ohio Rev. Code §§ 4112.02(I) and 4112.99.

349.    Because of Defendants' unlawful campaign of harassment, Ms. Robinson has suffered emotional distress.

### Count XVII

**Defendant Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Retaliatory Campaign of Harassment in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

350. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

351. Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's retaliatory campaign of harassment.

352. Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

353. Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's retaliatory campaign of harassment, and their obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

354. Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has suffered economic damages and emotional distress.

### Count XVIII

**Defendant TMST's Retaliatory Campaign of Harassment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.***

355. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

356. On or before September 27, 2018, Ms. Robinson instituted a proceeding with the EEOC by submitting a written statement to the EEOC that identified Defendant TMST as her employer and that it had engaged in unlawful retaliation against her.

357. On or about November 6, 2018, Ms. Robinson filed a charge of discrimination with the EEOC alleging discrimination and retaliation against Defendant TMST.

358. On January 14, 2020, the EEOC sent Ms. Robinson a notice of her right to sue for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

359. Defendant TMST's retaliatory campaign of harassment against Ms. Robinson violated Title VII of the Civil Rights Act of 1964.

360. Because of Defendant TMST's unlawful retaliation, Ms. Robinson has lost compensation and earnings, suffered emotional distress and incurred attorneys' fees and costs.

## Count XIX

### Defendant TMST's Retaliatory Failure to Evaluate Ms. Robinson's Job Duties and Adjust Compensation in Violation of Ohio Rev. Code §§ 4112.02(I) and 4112.99

361. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

362. On and after March 8, 2018, Defendant TMST failed to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion to which she was entitled by virtue of her experience, years of service and performance of duties.

363. Defendant TMST's failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion that she had earned, constituted a tangible, adverse employment action against her.

364. Defendant TMST's failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion that she had earned, was causally connected to Ms. Robinson's opposition to Defendants' discriminatory conduct and her participation in an investigation and proceeding under Ohio Rev. Code Chapter 4112.

365. Defendant TMST's failure to promote Ms. Robinson constituted unlawful retaliation in violation of Ohio Rev. Code §§ 4112.02(I) and 4112.99.

366. Because of Defendants' unlawful failure to promote Ms. Robinson, she has lost wages and benefits, advancement opportunities and suffered emotional distress.

## Count XX

### Defendants Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Retaliatory Failure to Evaluate Ms. Robinson's Job Duties and Adjust Compensation in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99

367. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

368. Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's retaliatory failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion to which she was entitled by virtue of her experience, years of service and performance of duties.

369. Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

370. Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's retaliatory failure to evaluate Ms. Robinson's job duties, adjust her

compensation, change her title or otherwise award her a promotion, and their obstruction or prevention of Defendant TMST from complying with Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

371.  Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has suffered economic damages and emotional distress.

## Count XXI

### TMST's Retaliatory Failure to evaluate Ms. Robinson's Job Duties and Adjust her Compensation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

372.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

373.  Defendant TMST's retaliatory failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

374.  Because of Defendant TMST's retaliatory failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her title or otherwise award her a promotion, Ms. Robinson has lost compensation and earnings, suffered emotional distress and incurred attorneys' fees and costs.

## Count XXII

### TMST's Discriminatory Constructive Discharge of Ms. Robinson in Violation of Ohio Rev. Code §§ 4112.02(A) and 4112.99

375.  Ms. Robinson restates the preceding allegations as though fully rewritten herein.

376.  On and after September 25, 2018, Defendant TMST continued its campaign of harassment against Ms. Robinson.

377.  On and after September 25, 2018, Defendant TMST failed to recommend Ms. Robinson's promotion.

378.  On information and belief, on and after September 25, 2018, Defendant TMST interfered with Ms. Robinson's job duties and the performance of her job.

379.  Defendant TMST engaged in its campaign of harassment, failed to evaluate Ms. Robinson's job duties, adjust her compensation, change her job title or award her a promotion and interfered with her job duties with the intention of causing her to resign.

380. A reasonable person in Ms. Robinson's position would feel compelled to resign by Defendant TMST's campaign of harassment, failure to evaluate Ms. Robinson's job duties, adjust her compensation, change her job title or award her a promotion and interference with her job duties.

381. Ms. Robinson felt compelled to resign by Defendant TMST's campaign of harassment, failure to evaluate her job duties, adjust her compensation, change her job title or award her a promotion and its interference with her job duties and the performance of her job.

382. Ms. Robinson's resignation constituted a constructive discharge.

383. Defendant TMST constructively discharged Ms. Robinson because of her race.

384. Defendant TMST's discriminatory constructive discharge of Ms. Robinson because of her race violated Ohio Rev. Code §§ 4112.02 and 4112.99.

385. Because of Defendant TMST's discriminatory constructive discharge of Ms. Robinson, she has lost wages and benefits and suffered emotional distress.

## Count XXIII

**Defendants Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Discriminatory Constructive Discharge of Ms. Robinson in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

386. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

387. Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's discriminatory constructive discharge of Ms. Robinson.

388. Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Code Chapter 4112.

389. Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory constructive discharge, and their obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

390. Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has suffered economic damages and emotional distress.

**Count XXIV**
**Defendants' Retaliatory Constructive Discharge of Ms. Robinson in Violation of Ohio Rev. Code §§ 4112.02(I) and 4112.99**

391.   Ms. Robinson restates the preceding allegations as though fully rewritten herein.

392.   On or about September 25, 2018, Ms. Robinson opposed unlawful discriminatory and retaliatory conduct by Defendants, and participated in an investigation and proceeding under Ohio Rev. Code §§ 4112.01 to 4112.07 by reporting to Defendant TMST's "Hotline" that Defendants TMST, Sterling and Zimmerman had engaged in a campaign of harassment against her, blocked her advancement, failed to evaluate her job duties, adjust her compensation, change her job title or award her a promotion because of her race and in retaliation for engaging in conduct protected by Ohio Rev. Code Chapter 4112.

393.   After September 25, 2018, Defendants constructively discharged Ms. Robinson.

394.   Defendants constructive discharge of Ms. Robinson was causally connected to her protected opposition to and participation in an investigation and proceeding under Ohio Rev. Code Chapter 4112.

395.   Defendants' constructive discharge of Ms. Robinson violated Ohio Rev. Code § 4112.02(I) and 4112.99.

396.   Because of Defendants' retaliatory constructive discharge of Ms. Robinson, she has lost wages and benefits and suffered emotional distress.

**Count XXV**

**Defendants Sterling's Aiding, Abetting, Inciting, Compelling and/or Coercing of Defendant TMST's Retaliatory Constructive Discharge of Ms. Robinson in Violation of Ohio Rev. Code §§ 4112.02(J) and 4112.99**

397.   Ms. Robinson restates the preceding allegations as though fully rewritten herein.

398.   Defendant Sterling aided, abetted, incited, compelled and/or coerced Defendant TMST's retaliatory and discriminatory constructive discharge of Ms. Robinson.

399.   Defendant Sterling thereby prevented Defendant TMST from complying with Ohio Rev. Coe Chapter 4112.

400.   Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's retaliatory and discriminatory constructive, and their obstruction or prevention of Defendant TMST from complying with Ohio Rev. Code Chapter 4112, violated Ohio Rev. Code §§ 4112.02(J) and 4112.99.

401. Because of Defendant Sterling's aiding, abetting, inciting, compelling and/or coercing of Defendant TMST's discriminatory conduct and her failure to prevent it, Ms. Robinson has suffered economic damages and emotional distress.

**Count XXVI**

**TMST's Retaliatory Constructive Discharge of Ms. Robinson
in Violation of Title VII of the Civil Rights Act 1964, 42 U.S.C. § 2000e, *et seq.***

402. Ms. Robinson restates the preceding allegations as though fully rewritten herein.

403. On or about September 25, 2018, Ms. Robinson opposed unlawful discriminatory and retaliatory conduct by Defendant TMST and participated in an investigation and proceeding under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, by reporting to Defendant TMST's "Hotline" that Defendants TMST, Sterling and Zimmerman had engaged in a campaign of harassment against her, blocked her advancement, failed to evaluate her job duties, adjust her compensation, change her job title or award her a promotion, because of her race and in retaliation for engaging in conduct protected by Title VII.

404. After September 25, 2018, Defendant TMST constructively discharged Ms. Robinson.

405. Defendant TMST's constructive discharge of Ms. Robinson was causally connected to her protected opposition to and participation in an investigation and proceeding under Title VII.

406. Defendant TMST's constructive discharge of Ms. Robinson violated Title VII.

407. Because of Defendant TMST's retaliatory constructive discharge of Ms. Robinson, she has lost wages and benefits and suffered emotional distress.


**PRAYER FOR RELIEF**

WHEREFORE, Ms. Robinson demands:

      A.     Compensation for lost wages and benefits.

      B.     Interest thereon.

      C.     Compensation for emotional pain and suffering.

      D.     Compensatory damages for college tuition and costs.

E.      Reinstatement or, if reinstatement is not feasible, front pay.

F.      An award of attorneys' fees and costs.

G.      Punitive damages.

H.      Such further relief as the Court deems just and equitable.

Respectfully submitted,

*/s/ Neil E. Klingshirn*
Neil E. Klingshirn (0037158)
neil@ekrtlaw.com
Stuart G. Torch (0079667)
stuart@ekrtlaw.com
Elfvin, Klingshirn, Royer & Torch, LLC
4700 Rockside Road
Suite 530
Independence, Ohio 44131
(216) 382-2500 (voice)
(216) 381-0250 (fax)

*Counsel for Plaintiff*

## Jury Demand

Plaintiff hereby demands a trial by jury of all issues triable to a jury.

/s/ Neil E. Klingshirn
Neil E. Klingshirn